# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BENECARD SERVICES, INC.,** | Civil Action No. 15-8593 (MAS) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **ALLIED WORLD SPECIALTY INSURANCE COMPANY et al,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff Benecard Services, Inc.'s ("Plaintiff") motion for a protective order (1) striking the subpoena's document request demanding irrelevant and privileged material; and (2) allowing Plaintiff to conduct a pre-production privilege review of Wells Fargo's remaining responsive documents. (Docket Entry No. 85). Defendants Allied World Specialty Insurance Company ("Allied") and Atlantic Specialty Insurance Company ("Atlantic") oppose Plaintiff's motion. (Docket Entry Nos. 90 and 91). The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion is DENIED.

## I. Background and Procedural History

Plaintiff filed its complaint against Defendants Allied World Specialty Insurance Company, Atlantic Specialty Insurance Company and RSUI Indemnity Company on December 14, 2015 and amended its complaint to add Defendants Travelers Property Casualty Company of America ("Travelers") and Ace Property and Casualty Insurance Company ("Ace") on September 28, 2016. Plaintiff seeks "(i) a declaratory judgment that [Defendants] must provide

coverage for defense and indemnity costs arising from the now-settled lawsuit against Plaintiff, Smart Insurance Company v. Benecard Services, Inc., Civil Action No. 1:15-CV-04384, filed in the United States District Court for the Southern District of New York ("Smart Action"); (ii) compensatory and consequential damages arising from Allied's, Travelers' and Atlantic Specialty's breaches of their insurance policies; and (iii) consequential damages arising from Allied's, ACE's and Atlantic Specialty's bad faith conduct toward plaintiff." (Pl.'s Br. in Supp. of Mot. at 1-2).

The instant motion involves a subpoena duces tecum ("subpoena") served by Allied on non-party Wells Fargo Insurance Services USA, Inc. ("Wells Fargo") on August 19, 2016. Wells Fargo facilitated Allied's sale of its D&O insurance policy to Plaintiff.

Allied's subpoena demands the following documents from Wells Fargo:

1. Wells Fargo's complete file related to the application for, negotiation of and procurement of any errors and omissions, directors and officers/management liability and general liability insurance policies on behalf of Plaintiff since 2010 ("Request 1").
2. Any documents related to, referring to, or concerning any of the policies and any predecessor or renewal policies purchased by Plaintiff since 2010 ("Request 2").
3. Any documents in Wells Fargo's possession regarding the Smart Action and/or Plaintiff's pursuit of insurance coverage for the Smart Action ("Request 3").
4. Any and all communications between Wells Fargo and Plaintiff regarding insurance since 2010 ("Request 4").
5. Any and all communications between Wells Fargo and Plaintiff or any of its insurers regarding the Smart Action ("Request 5").
6. Any and all communications between Wells Fargo and any individuals employed at the law firms of McCarter & English, LLP or DLA Piper regarding the policies and/or the Smart Action ("Request 6").
7. Any and all documents in Wells Fargo's possession regarding the scope of coverage to be provided under the errors and omissions and directors and officers/management liability policies ("Request 7").

(*See* Pl.s Br. in Supp. of Mot. at 2-3)

Plaintiff argues that the subpoena seeks irrelevant and privileged information. (Id. a 4). Plaintiff further argues that requests 1, 2, 4 and 7 "seek material neither relevant to the parties'

2

claims or defenses nor reasonably calculated to lead to the discovery of admissible evidence" (Id. at 5). Plaintiff states that these requests are overbroad in that they seek information that is not at issue in this action, has no connection with Allied, has no connection with any other Defendant in this action and has no connection with the Smart Action. (Id.).

Additionally, Plaintiff argues that requests 6 and 7 "seek access to information protected by the attorney-client privilege and/or work product doctrine." (Id. at 6). Plaintiff states that if Wells Fargo acted as Plaintiff's agent in purchasing its insurance policies, then the documents and communications they exchange may potentially fall within the attorney client and work product privileges. (Id. at 6 citing *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. 05-cv-3158 (SRC), 2006 WL 1320067 (D.N.J. May 12, 2006)).

Plaintiff argues that in addition to striking document requests 1, 2, 4, 6, and 7, the Court should allow Plaintiff to review Wells Fargo's documents before their production to Allied to prevent improper disclosure of privileged information. (Id. at 7). Plaintiff notes that "the Court does not hesitate to require such pre-production review to protect the privilege." (Pl.'s Br. in Supp. of Mot. at 7 citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Becton, Dickinson and Company*, No. 14-cv-4318 (CCC) (D.N.J. Sept. 2, 2016) and *In re Kane v. Mfrs. Life Ins. Co.*, No. 08-cv-4581, 2010 WL 2178837 (D.N.J. May 26, 2010)).

Allied argues that Request 1, Request 2, and Request 7 are relevant because Allied has paid substantial defense costs on Benecard's behalf in the Smart Action and "there can be no dispute that Allied…are entitled to discovery regarding any other potential sources of relevant insurance for the Smart [Action]." (Allied's Opp. Br. at 4). Allied further states that Request 1 is "tailored to the three types of policies at issue here-D&O, E&O and GL-since 2010 and Request 2 is "limited to any of the "Policies," which is defined as those involved in the lawsuit." (Id. at

3

4). Furthermore, Allied argues that Request 7 is relevant because Benecard "appears to contemplate asserting arguments that certain provisions in the Insurer Defendant's policies are ambiguous, unenforceable and/or contrary to Benecard's understanding." (Id. at 6).

As for Request 4, Allied states that in response to Plaintiff's claim of overbreadth, it agrees to limit it to "Any and all communications between Wells Fargo and Benecard *regarding D&O, E&O and/or GL* insurance since 2010." (Id. at 5). Allied argues that information "regarding the scope of D&O, E&O and/or GL coverage needed, the application process for such insurance, the scope of insurance ultimately procured, and the terms of the policies is highly relevant to [the] parties' claims and defenses in this action." (Id.)

Allied argues that Request 6, "Any and all communications between Wells Fargo and any individuals employed at the law firms of McCarter & English, LLP or DLA Piper regarding the Policies and/or the Smart [Action]" is relevant because "[c]learly, communications between Wells Fargo and Benecard's underlying defense counsel or coverage counsel relating to the policies and/or the Smart [Action] are relevant under the broad umbrella of Rule 26." (Id.)

Allied argues that Plaintiff cannot satisfy its burden to show that the responsive documents are protected by the attorney client privilege and/or work product doctrine. (Id.) Allied notes that Wells Fargo is not a party to this case and is not represented by DLA Piper or McCarter & English, therefore, the attorney client privilege and/or work product doctrine does not apply (Id.) Allied further notes that it has not asserted that Wells Fargo acted as Benecard's agent in purchasing its insurance policies. (Id.) Allied states that "Benecard utilized Wells Fargo's services as an insurance broker completely independent from (and prior to) any ongoing or anticipated litigation. Communications to and from Wells Fargo made in the ordinary course of business are not subject to any privilege." (Id. at 8)

4

In addition to joining in Allied's arguments that the information requested is relevant, Atlantic argues that Benecard lacks standing to ask the Court to strike the disputed requests. (Atlantic's Opp. Br. at 4). Atlantic notes that Wells Fargo did not object to any of the subpoena's requests and did not move to quash the subpoena. (Id.) Atlantic states that Benecard has not claimed a privacy interest in the documents sought and "has failed to demonstrate the existence of any privilege with respect to the documents sought." (Id. at 5).

As for Benecard's assertion that the information in Requests 6 and 7 is privileged, Atlantic argues that Benecard "does not actually assert, let alone establish, that Wells Fargo was or is its agent" and that "Benecard wants to be able to assert attorney-client privilege as to Wells Fargo documents without actually binding itself to an agency relationship with Wells Fargo. (Id. at 9).

**II.     Analysis**

Federal Rule of Civil Procedure 26(c) ("Rule 26(c)") governs motions seeking the entry of a protective order. Pursuant to Rule 26(c), "[a] party or person from whom discovery is sought may move for a protective order in the court where the action is pending" and [t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[.]" For example, where good cause is shown, the court may forbid the disclosure or discovery (Rule 26(c)(1)(A)) or forbid inquiry into certain matters or limit the scope of disclosure or discovery to certain matters. (Rule 26(c)(1)(D)).

It is well established that the party seeking entry of a protective order bears the burden of demonstrating that good cause exists for the order of protection. (*Pansy v. Borough of Stroudsburg*, 22 F.3d 772, 786 (3d Cir. 1994)). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure."

5

(*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).  Further, the injury claimed "must be shown with specificity."  (*Id.*; *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (finding that [i]n delineating the injury to be prevented, *specificity is essential*.") "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient to establish good cause.  (*Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)).

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process."  (*Pansy*, 23 F.3d at 787).  Under this process, the court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled.  When the risk of harm . . . outweighs the need for discovery, disclosure [through discovery] cannot be compelled[.]"  (*Id.*) (internal quotation marks and citation omitted).  Nondisclosure in total is an "infrequent result."  (*Id.*) (internal quotation marks and citation omitted)).  Instead, the issue usually becomes whether disclosure should be made in a specified way.  In determining whether good cause exists to limit disclosure, as permitted by Rule 26(c)(1)(D) and other provisions of Rule 26(c)(1), the court again balances the harm to the party or third persons seeking protection against the importance of disclosure to the public or the party seeking same.  (*Id*).  The Court always has discretion to issue a protective order limiting discovery under Rule 26(c) when there is good cause to do so.

Here, the Court finds that good cause does not exist to enter the protective order. Plaintiff's arguments in support of the protective order all relate to relevancy and privilege. The Court finds that as the allegations in the underlying matter relate to insurance coverage for a now-settled lawsuit, the information requested by Allied is relevant.  Additionally, the Court

finds that the requests are not overbroad.  Both sides concede that Plaintiff first dealt with Smart in 2012.  It is reasonable that communications regarding the Policies could have started in 2010.

The Court further finds that Plaintiff has not demonstrated that the information requested in Request 6 and Request 7 is protected by the attorney client privilege or the work product doctrine.  The Court notes that while Plaintiff argues that that <u>if</u> Wells Fargo acted as Plaintiff's agent in purchasing its insurance policies, then the documents and communications they exchange <u>may potentially</u> fall within the attorney client and work product privileges, Plaintiff has not actually stated that Wells Fargo acted as Plaintiff's agent or offered any evidence that Wells Fargo acted as Plaintiff's agent.  The Court further notes that any communications between Wells Fargo and DLA Piper or McCarter & English are not protected by the attorney-client privilege as Wells Fargo is not represented by either firm.  Plaintiff has not met the burden of showing that good cause exists to issue a protective order.

The Court finds that a pre-production privilege review of Wells Fargo's responsive documents is not necessary.  The cases cited by Plaintiff in support of its argument that "the Court does not hesitate to require such pre-production review to protect the privilege" are distinguishable.   In *Kane*, Plaintiff Thomas F. Kane objected to a subpoena issued by Defendant The Manufacturers Life Insurance Company against non-party Thomas F. Kane, Jr. claiming that the documents requested were protected by the attorney-client privilege and/or work product doctrine. (*In re Kane v. Mfrs. Life Ins.* at 1).  The Court stated "this Court is persuaded by Adare's[1] assertion that certain documents may be protected under either the attorney-client privilege and/or work product doctrine.  Therefore, Adare shall be provided with an opportunity to review the relevant documents and meet and confer with [Defendant] Manulife in a good faith

---

[1] Thomas F. Kane, Jr. is a limited partner of Adare (*In re Kane v. Mfrs. Life Ins. Co.*, No. 08-cv-4581, 2010 WL 2178837 at 2 (D.N.J. May 26, 2010)).

attempt to resolve any disputes and/or objections." (Id.). This Court notes that although the Court in *Kane* did not recognize Plaintiff's assertion of privilege[2], it was willing to let non-party Adare determine whether it had a protectable privilege regarding subpoenaed documents and, therefore, permitted the attorney for Adare to review for privilege before producing the documents. This Court further notes that Adare submitted a brief to prevent the disclosure of Adare's privileged information and/or confidential information. (Id. at 2). In this case, non-party Wells Fargo has not objected to Allied's subpoena.

In *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Becton, Dickinson and Company*, Defendant Becton Dickinson initially anticipated moving for a protective order striking document requests and allowing Becton Dickinson to review the requested documents for privilege prior to their production. The parties subsequently agreed to the pre-production review and withdrew the request for pre-production review as moot, therefore, the Court never rendered an opinion regarding the appropriateness of the pre-production review. (*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Becton, Dickinson and Company*, No. 14-cv-4318, Docket Entry No. 92 (CCC) (D.N.J. Sept. 2, 2016)).

**Conclusion**

For the reasons stated above, Plaintiff's motion for a protective order is DENIED[3]. Plaintiff's request to conduct a pre-production privilege review of Wells Fargo's remaining

---

[2] "Here, this Court finds that Plaintiff failed to demonstrate that communications made between Kane Jr. and Plaintiff's counsel are protected by the attorney-client privilege." (*In re Kane v. Mfrs. Life Ins.* at 6).
[3] The Court does, however, modify Request 7 to state "Any and all documents in Wells Fargo's possession regarding the scope of coverage to be provided under the errors and omissions and directors and officers/management liability policies since 2010."

responsive documents is DENIED.  An appropriate Order follows.

Dated:  April 17, 2017

    s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**